## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

**ATLAS RESOURCES, INC.**,
a New Mexico Corporation,

      Plaintiff,

v.                                                          **No. 09-CV-1113 WJ/RLP**

**LIBERTY MUTUAL INSURANCE CO.**,
a Massachusetts Corporation,

      Defendant,

and

**FIRST COMMUNITY BANK OF NEW
MEXICO**, a New Mexico Corporation,

      Interested Party.

### MEMORANDUM OPINION AND ORDER

THIS MATTER comes before the Court on (i) Defendant Liberty Mutual Insurance Company's *Motion to Dismiss pursuant to Rule 12(b)(6), and, in the alternative, Motion for a More Definite Statement pursuant to Rule 12(e)* [Doc. 40], filed Feb. 11, 2010; on its *Objections to Magistrate Puglisi's May 5, 2010 Order* [Doc. 66], filed May 11, 2010; on its *Objections to Magistrate Puglisi's May 4, 2010 Order* [Doc. 74], filed May 14, 2010; and on its *Motion for Protective Order*, [Doc. 80], filed May 26, 2010, seeking an order staying all further discovery sought by Atlas pending resolution of Liberty Mutual's Motion to Dismiss.

## I.  THE MOTION TO DISMISS OR FOR MORE DEFINITE STATEMENT.

### A.  Liberty Mutual Insurance Company is a proper party.

Liberty Mutual contends that it is "an improperly-named defendant against which Atlas has no plausible claim."  Doc. 40 at 1.  It concedes, however, that the irrevocable letter of credit that

guarantees Atlas's performance under Atlas's contracts with the Liberty Mutual Fire Insurance Corporation ("LMFIC"), which is Liberty Mutual's subsidiary or affiliate corporation, is, in fact, issued to Liberty Mutual.  Some of Atlas's claims regard Liberty Mutual's allegedly improper drafting against this letter of credit.  Further, in its Amended Answer to Atlas's original Complaint, Liberty Mutual admits that "it investigates and administers claims submitted by Plaintiff, and makes appropriate payments,"  Doc. 19 ¶ 11, at 3, and as Liberty Mutual notes, Atlas has sued Liberty Mutual for "improper handling of Atlas' workers' compensation claims," Doc. 40 at 2.  In its amended answer, Liberty Mutual also "admits that it required Plaintiff to increase the amount funding its Letter of Credit, and Liberty Mutual further admits Atlas' inability or refusal to increase its Letter of Credit would leave Liberty Mutual no other recourse than to convert Atlas' existing deductible program to a guaranteed cost plan, and to bill Atlas for the difference in premiums between the two programs," Doc. 19 ¶ 17, at 3, which indisputedly relate to Atlas's contracts or policies with LMFIC.  Certainly, if Liberty Mutual has the power under the contracts or policies to unilaterally convert the programs and increase premium payments on behalf of its subsidiary or affiliate corporations, it must be, in some aspect, a party to the policies.  In addition, based on its allegations that "Liberty Mutual . . . sold a 'Large Deductible Retrospective' Workers' Compensation Plan (the 'Policy') to Atlas . . . pursuant to an 'Agreement for Guarantee of Financial Obligations' (the 'Agreement') entered into between the parties," *id.* at 10, Liberty Mutual filed amended counterclaims against Atlas for breach of contract, malicious abuse of process in seeking a TRO that would keep Liberty Mutual from drawing down on the letter of credit, and for breach of the covenant of good faith and fair dealing, *see id.* at 13-15.  The Court concludes that Liberty Mutual is a proper party, but will allow Atlas to amend its Amended Complaint to add LMFIC as an additional named Defendant in the style of the case.

2

**B.  The Amended Complaint sufficiently states claims for relief.**

Liberty Mutual next contends that either claims "I, II, III, IV, V, VI, VII, IX and XII should be dismissed in their entirety for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6)," or that they "are pleaded so vaguely as to warrant a more definite statement pursuant to Federal Rule of Civil Procedure 12(e)."  Doc. 40 at 1-2. In resolving the motion, the Court has not relied on Atlas's submissions, attached to its Response, of materials outside the pleadings.

To survive a motion to dismiss, the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face," *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007), and enough facts to give the defendant "not only 'fair notice' of the nature of the claim, but also 'grounds' on which the claim rests," *id.* at 556 n. 3.  The complaint need not, however, contain "detailed factual allegations," *id.* at 555, but, rather, it must simply allege sufficient "factual content that allows the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009).

The Tenth Circuit holds "that the degree of specificity necessary to establish plausibility and fair notice, and therefore the need to include sufficient factual allegations, depends on context: Context matters in notice pleading.  Fair notice under Rule 8(a)(2) depends on the type of case. . . ." *Robbins v. Oklahoma*, 519 F.3d 1242, 1248 (10th Cir. 2008) (internal quotation marks omitted).

Count I is for Intentional Misrepresentation. *See* Amended Complaint at 8.  Atlas set forth in paragraphs 19-30 the specific dates and persons involved in Liberty Mutual's alleged intentional misrepresentations that Atlas allegedly relied on to its detriment.  These facts are pleaded with sufficient particularity to state a claim for intentional misrepresentation, or in the alternative, for the claim of negligent misrepresentation alleged in Count II.  Paragraphs 43-45 also state facts specific

3

to alleged negligent misrepresentation by either Liberty Mutual or LMFIC.

Count III is for Unfair Trade Practices, Count IV is for Unjust Enrichment, and Count V is for Equitable Estoppel. *See* Am. Compl. at 9. Paragraphs 11-39 sufficiently detail the facts supporting these claims against Liberty Mutual in regard to its drafting on the letter of credit.

Count VI is for Breach of Contract in regard to the investigation, handling, and payment of certain workers' compensation claims on Atlas's behalf and for failure to properly set and establish amounts of obligations and reserves for which Atlas was obligated. *See id.* at 10. The Amended Complaint mentions a "Claim Service Agreement" and a "Guarantee of Payment of Financial Obligations or Agreement." As to the breach-of-contract claims, Atlas alleges that the policies and Claim Service Agreement obligate Liberty Mutual and/or LMFIC "to properly investigate, administer and make appropriate payments and manage worker's compensation claims to control claim costs," and that it failed to do so by overstating and overpaying claims costs. *See* Am. Complaint ¶¶ 41, 46, 48 at 6-7. Atlas also alleged that, "[f]ollowing non-renewal of the Policies, Liberty lowered the level of service it provided to Atlas in the handling of claims, reduced claim reviews it would provide Atlas under the Policies and refused to allow Atlas continued access to RiskTrac." *Id.* ¶ 51 at 8.

Liberty Mutual contends that "at least 800 different insurance policies currently govern the contractual relationship between Atlas and Liberty, each implicating multiple states' substantive laws, [and] Atlas has not specifically identified or made reference to a single policy. Given that Atlas has not identified which of the hundreds of policies . . . are potentially applicable," or which of the thousands of worker's compensation claims Liberty has handled over the past 15 years that were allegedly improperly investigated or paid, Liberty Mutual contends that the Amended Complaint is not pleaded with sufficient specificity. *See* Doc. 40 at 4-6 (citing *Twombly*, 550 U.S.

4

at 558 ("a district court must retain the power to insist upon some specificity in pleading before allowing a potentially massive factual controversy to proceed")).

The Court concludes that the Amended Complaint states a plausible claim for breach of contract.  The Court also concludes, however, that, if it has not already done so in its Rule 26 disclosures or other discovery responses, Atlas shall identify the specific policies and/or agreements upon which it relies for its breach-of-contract and other claims associated with the policies or agreements.

The Court notes that Atlas has given several specific examples of claims that it believes were improperly investigated or paid, and has requested discovery limited to claims paid within the past 5 years that were over $20,000.  *See* Motion to Compel (Doc. 42).  It also has apprised Liberty Mutual of many of the specific deficiencies that form the basis of its breach-of-contract claim.  *See* Doc. 42, Atts. 1, 3.  The Amended Complaint gave Liberty Mutual fair notice of the claims against Liberty Mutual and/or LMFIC such that they can mount a defense to Atlas's claims.

Count VII is for breach of the implied covenant of good faith and fair dealing.  *See* Amended Complaint at 10.  Count VIII is for breach of the common law duty of good faith, and Count IX is for prima-facie tort.  *See id.* at 11.  Count X is for violation of the New Mexico Unfair Insurance Practices Act on the allegation that the Defendants engaged in unfair claims practices.  *See id.* at 12.  Count XI is for breach of the Defendants' fiduciary obligations that were owed to Atlas under the insurance policies.  *See id.*  Again, the allegations in the Amended Complaint have put the Defendants on fair notice of the claims against them, and Atlas shall indicate all policies and agreements that it contends were breached.

### C.  Tort claims against Liberty Mutual and LMFIC are viable.

Although Liberty Mutual asserts that it is ***not*** a party to Atlas's insurance contracts with

LMFIC, relying on *Kreischer v. Armijo*, 118 N.M. 671, 673, 884 P.2d 827, 829 (N.M. Ct. App. 1994), it incongruously contends that Atlas's claims against it for misrepresentation, unfair trade practices, unjust enrichment, equitable estoppel, common-law insurance bad faith, prima facie tort, and punitive damages "are not recognized under New Mexico law as viable claims apart from those founded on Atlas' breach of contract claim."  Doc. 40 at 8.  If Liberty Mutual is not a party to the insurance policies, the Court is hard pressed to see how the tort claims may be barred by contract claims against a different entity.  Further, the Court concludes that the gravamen of Atlas's Amended Complaint, unlike the complaint discussed in *Kreischer*, contains both breach-of-contract claims against LMFIC and/or Liberty Mutual in dealing with investigation and payment of claims and independent tort claims based on Liberty Mutual's behavior during the last few months regarding the Letter of Credit.  Further, the Defendants had duties to Atlas that were imposed not only by contract, but also by statutory and common-law insurance laws, and Liberty Mutual concedes that "claims for breach of fiduciary duty and breach of the implied covenant of good faith and fair dealing sound in both contract *and* tort, and as such, can be brought *in addition* to those claims arising solely out of the insurance contract."  Doc. 46 at 8.  New Mexico recognizes bad-faith claims against insurers in addition to breach-of-contract claims, and allows an award of punitive damages "when the insurer's conduct was in reckless disregard for the interests of the [insured], or was based on a dishonest judgment, or was otherwise malicious, willful, or wanton."  *Sloan v. State Farm Mut. Auto. Ins. Co.*, 135 N.M. 106, 108, 85 P.3d 230, 232 (2004).

**D.  The claim for equitable estoppel is moot.**

In Count V of its Amended Complaint, Atlas contends that Liberty Mutual should be prevented from drafting on the Letter of Credit under the principles of equitable estoppel.  *See* Doc. 38 at 10.  Liberty Mutual contends that the Court should dismiss this claim "because it clearly and

6

unequivocally requests relief that has already been decided by this Court in the underlying Preliminary Injunction matter that has been adjudicated between the parties." Doc. 40 at 14. The Court agrees, and will dismiss Count V as moot.

**E.  Atlas has waived its right to a jury trial on Count IV.**

Liberty Mutual contends that Atlas has waived its right to a jury trial and that the Court should "strike Atlas' demand for trial by jury with respect to the entire action, but most certainly with respect to Counts IV (Unjust Enrichment) and V (Equitable Estoppel), which pertain solely to the Letter of Credit and Agreement for Guarantee of Financial Obligations." Doc. 40 at 17. The pertinent waiver clause in the Agreement for Guarantee of Financial Obligations states:

> **Waiver of Trial by Jury**. Policyholder and Liberty Mutual hereby waive any right to a trial by jury in any action or proceeding to enforce or defend any rights under this Agreement or under any agreement, instrument or document delivered, or which may in the future be delivered, in connection herewith and agree that any such action or proceeding shall be tried before a court and not before a jury.

Doc. 19, Ex. 1, ¶ 19.

As noted above, Count V will be dismissed as moot. It has long been established that "the right of jury trial is fundamental, [and] courts indulge every reasonable presumption against waiver." *Aetna Ins. Co. v. Kennedy*, 301 U.S. 389, 393 (1937). Accordingly, the Court will strictly construe the clause waiving the right to a jury trial, and will limit the scope of the waiver to the express language of that waiver. *Cf. United States v. Anderson*, 374 F.3d 955, 957-58 (10th Cir. 2004) (strictly construing the scope of an appeal waiver according to the terms of the agreement). The Court concludes that this waiver does not apply to Atlas's causes of action except for Count IV, its claim of unjust enrichment, in which it contends that, by drafting on the letter of credit, Liberty Mutual unjustly enriched itself. The claim for unjust enrichment is the only action to enforce or defend Atlas's rights under the Guarantee of Financial Obligations. The Court will not present

7

Atlas's claim under Count IV to the jury, but will instead enter findings and conclusions at the end of the trial on that claim.

## II.   Liberty Mutual's Objections to Magistrate Puglisi's May 5, 2010 Order.

A "district court must defer to the magistrate judge's [discovery] ruling unless it is clearly erroneous or contrary to law." *Hutchinson v. Pfeil*, 105 F.3d 562, 566 (10th Cir. 1997); *see* 28 U.S.C. § 636(b)(1)(A). "Under the clearly erroneous standard, the reviewing court must affirm unless it on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Allen v. Sybase, Inc.*, 468 F.3d 642, 658 (10th Cir. 2006) (internal quotation marks and bracket omitted).

In the May 5 Order granting Atlas's motion to compel, Judge Puglisi noted that "boilerplate, blanket objections are improper," and that a "'proper' objection is one that is tailored to the interrogatory, not a conclusory objection such as 'overbroad' or 'unduly burdensome,' which neglects to say *why* the interrogatory is subject to that objection." Doc. 64 at 1-2. Judge Puglisi noted that, "[i]f a proper objection is made, the party still has the obligation to answer as much of the interrogatory as it can." *Id.* Judge Puglisi also stated that "[m]aking an objection and then responding to the interrogatory waives the objection," *id.*, and that "[c]onclusory assertions of the confidential or proprietary nature of the information sought will not shield it from discovery," *id.* at 3.

In objecting to interrogatories 1, 3, and 9, and Requests for Production nos. 7-17, Liberty Mutual made the conclusory objections that the interrogatories were: "unduly burdensome," "irrelevant," and that information could be obtained from public records. *See id.* at 23. It asserted that they were "unduly burdensome" and irrelevant because Liberty Mutual would have to identify employees who have not handled claims involving Atlas, *see id.* at 24; and contended that some were "inherently vague and ambiguous," "overbroad," and irrelevant, *id.* at 27. Liberty Mutual

8

answered the interrogatories subject to its objections.   Liberty Mutual made similar objections to the requests for production, but produced some materials in response to the requests. *See id.* at 32-37. Judge Puglisi ordered Liberty Mutual to fully answer these interrogatories and produce the requested materials, implicitly concluding that its objections were waived for failure to assert valid objections. *See* Doc. 64 at 3, 4.   He also required Liberty Mutual to submit "a verification, under oath, that no additional information is available and that the interrogatory was answered fully." *Id.* at 3, 4.

In its objections to this part of Judge Puglisi's May 5 Order, Liberty Mutual contends that "Magistrate Puglisi [] ignores direct Tenth Circuit precedent supporting the practice of preserving objections, yet supplying responses and answers thereto," and "seems to erroneously require verified responses to requests to production."   Doc. 66 at 1.   The Court concludes that Judge Puglisi's conclusions are not clearly erroneous or contrary to law because the basis of denying the objections was Liberty Mutual's failure to properly tailor its objections to the interrogatories and requests. Further,  he did not require Liberty Mutual to "verify" the responses to the requests for production; he required it to verify that it had produced everything in its files that was responsive to the requests and that there were no additional responsive documents that it did not produce based on its improper objections.

Liberty's next objection involves production of documents pursuant to a confidentiality agreement.  Liberty contends:

> With respect to Interrogatory nos. 5, and Requests for Production nos. 1, 2, 3, 5, 6, 21 and 24, Magistrate Puglisi states that Liberty has not moved for a protective order, and therefore, orders production of Liberty's confidential and proprietary documents pursuant to a confidentiality agreement which is to be filed with the Court within 10 days of entry of the May 5, 2010 Order.  However, this ruling completely ignores the fact, as set forth in great detail in Liberty's Response to Atlas' Second Motion to Compel, that the parties have been negotiating the terms of a protective order for

> months, and that Liberty served a stipulation with its discovery responses under the
> assumption that the parties would reconcile this issue among themselves so as not
> to have to seek a ruling from the Court on a Motion for Protective Order.

Doc. 66 at 5.  The Court notes that the parties were unable to reach a stipulated agreement, and

Judge Puglisi has entered a Protective Order regarding confidentiality based on the parties' separate

submissions.  *See* Doc. 79.  Liberty Mutual's objection is moot.

Finally, Liberty complains that Judge Puglisi did not address its objections limiting the

geographic and temporal scope of its responses, and contends that the geographic scope should be

limited to New Mexico and the temporal scope should be limited to five years.  *See* Doc. 66 at 7-9.

Liberty Mutual objected to Interrogatory nos. 1, 4, and 9, and Requests nos. 1, 3, 4, 13, 14,

16, 17, and 19 as overly broad because the requests were not limited in temporal scope.  Liberty

objected to Interrogatory nos. 1, 2, 4, and 9; and Requests nos. 2, 3, 4, and 5 as overly broad because

the information requested was not limited in geographic scope.  But Atlas did not seek to compel

further production of information for Interrogatories nos. 2 and 4 or Request no. 4.  And Requests

nos. 13 and 16 were, in fact, limited to the temporal scope of 5 years.

The Court agrees that the temporal scope of Interrogatories no. 1 and 9, and Requests nos.

1, 3, 13, 17, and 19 should be limited to the five years preceding the filing of the Complaint.  The

Court further concludes, however, that, because the information requested is relevant and most of

the challenged Interrogatories and Requests are limited to the Defendants' contracts with Atlas, they

should not be limited by a geographic scope.

## III.    Liberty Mutual's Objections to Magistrate Puglisi's May 4, 2010 Order

Atlas sought the production of 173 of its claims file, together with documents related to those

files, that involved paid claims of more than $20,000 within the past five years and arising mostly

in New Mexico and California, but with five claims from Colorado and one each from Texas,

Kentucky, and Louisiana.  *See* Doc. 42, Att. 2 at 1-2.  Atlas offered to go to wherever the files were located and have a third-party vendor scan the files onto a disc at no cost to Liberty Mutual.  *See* Doc. 42, Ex. C.  Liberty Mutual  objected, contending that the requests for production were "overly broad as to scope, time, and place" because Atlas's Amended Complaint had not alleged specific wrongdoings.  Doc. 42, Att. 2, Ex. B at 5.  It objected to the requests as "unduly burdensome" because it would have to examine each file for attorney-client privilege and to see whether the release of the information to Atlas would violate the claimant's privacy-act rights.  *See id.*  It alleged a general attorney-client privilege and stated that it would provide a privilege log *if* it was required to respond to the Request.  *Id.*  It also contended that the files were "equally available" to Atlas; that producing the files was an "unwarranted invasion" into its financial and business records, and that Atlas requested irrelevant information that was not reasonably calculated to lead to the discovery of admissible evidence.  *Id.* at 6.

Judge Puglisi concluded that "[t]he problem with each and every one of Liberty's objections is that they are conclusory and without a factual basis;" that "failure to produce [a privilege] log waives the privilege;" that "the conclusory claims of 'confidential' and 'proprietary' and 'statutory' privileges fail because Liberty has failed to carry its burden of showing the Court *which* documents should not be produced and *why*;" and that the requested documents were relevant.  Doc. 63 at 2.

The Court has reviewed Liberty Mutual's objections and finds them to be without merit.  Liberty Mutual continues to argue that it did not have to produce *any* claims files because Atlas did not give any specific examples of wrongdoing in regard to handling the worker's compensation claims in its Amended Complaint.  As noted above, however, the Court concludes that Atlas's Amended Complaint is sufficient to allow discovery regarding alleged improper investigation and payment of claims regarding specific files.

11

Liberty Mutual contends that ordering Liberty Mutual to produce the documents because it had not filed an attorney-client privilege log and therefore waived the right is a "draconian" and "harsh" response.  The Court concludes that Judge Puglisi's ruling is not clearly erroneous or contrary to law. *See Peat, Marwick, Mitchell & Co. v. West*, 748 F.2d 540, 542 (10th Cir. 1984) ("A party seeking to assert the privilege must make a clear showing that it applies.  Failure to do so is not excused because the document is later shown to be one which would have been privileged if a timely showing had been made.  Even though it does not seem seriously disputed that the privilege would have attached if the objection had been timely and adequately asserted, that such a showing had not been made when the trial court was called upon to make its ruling defeats the privilege.  It is not enough that a document would have been privileged if an adequate and timely showing had been made.  The applicability of the privilege turns on the adequacy and timeliness of the showing as well as on the nature of the document."); FED. R. CIV. P. 26(b)(5) ("When a party withholds information otherwise discoverable by claiming that the information is privileged or subject to protection as trial-preparation material, the party must: (i) expressly make the claim; and (ii) describe the nature of the documents, communications, or tangible things not produced or disclosed--and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim); FED. R. CIV. P. 34(2)(C) ("An objection to part of a request must specify the part and permit inspection of the rest.").  Liberty Mutual's discovery responses were due by February 7, 2010, but it still had not produced a privilege log or any documents that clearly were not privileged before Judge Puglisi issued his ruling on May 4, 2010. Its delay was undue.

Further, the Court is hard pressed to see how an attorney-client privilege would apply to any documents in claims files regarding investigations and payments for Atlas's worker's compensation

claims, made in the regular course of the Defendants performing the contract for services on Atlas's behalf.

In addition, except for a brief reference to the California Confidential Medical Information Act's prohibition against disclosing medical information to an employer of an injured worker (and Atlas is not an "employer"), Liberty Mutual does not attempt to explain why Atlas (as opposed to its agent, the Defendants) is not entitled to review the claims files that form the basis of Atlas's payment for medical expenses for which a worker's-compensation claimant must waive confidentiality.  The Act expressly permits disclosure "to an insurer, employer, health care service plan, hospital service plan, employee benefit plan, governmental authority, contractor, or any other person or entity responsible for paying for health care services rendered to the patient, to the extent necessary to allow responsibility for payment to be determined and payment to be made," and to "a person or entity that provides billing, claims management, medical data processing, or other administrative services. . . for any of [those entities]."  Cal. Civ. Code § 56.10(c)(2), (3).  Once the qualifying entity, like Atlas or the Defendants, has the protected information, the Act provides that the information "shall not be further disclosed by the recipient in a way that would violate this part."  Cal. Civ. Code § 56.10(c)(3).  As a matter of law, it does not violate the Act for the Defendants to disclose the medical information of the claimants to Atlas, who ultimately provides the payment for medical claims.

Insofar as Judge Puglisi erroneously believed that the temporal scope of the 173 requested files was limited to three, instead of to five years, the Court finds no clear error.  Liberty Mutual has sought to limit discovery to five years, and all of the claims files fall within that period.

**IT IS THEREFORE ORDERED** that Liberty Mutual's motion to dismiss or for more definite statement [Doc. 40], is DENIED in part and GRANTED in part.  Count V is DISMISSED

as moot; and within twenty days of the filing of this Order, Atlas shall identify the specific policies and/or agreements (that have not already been identified) upon which it relies for its breach-of-contract and other claims associated with the policies or agreements, and shall amend its Amended Complaint to add LMFIC as an additional named Defendant in the style of the case;

**IT IS FURTHER ORDERED** that Liberty Mutual's appeal from Magistrate Puglisi's May 5, 2010 Order [Doc. 66] is DENIED in PART and GRANTED in PART, and that the temporal scope of Interrogatories nos. 1 and 9, and Requests for Production nos. 1, 3, 13, 17, and 19 is limited to the five years preceding the filing of the Complaint; and

**IT IS FURTHER ORDERED** that Liberty Mutual's appeal from Magistrate Puglisi's May 4, 2010 Order [Doc. 74] is DENIED; and

**IT IS FURTHER ORDERED** that Liberty Mutual's motion for protective Order [Doc. 80] is DENIED as moot.

_____

UNITED STATES DISTRICT JUDGE

14