IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

ATLAS RESOURCES, INC., a
New Mexico Corporation,
      Plaintiff and Counter-defendant,

v.                                         CIV 09-1113 WJ/KBM

LIBERTY MUTUAL INSURANCE CO.,
a Massachusetts Corporation; LIBERTY
MUTUAL FIRE INSURANCE COMPANY,
a Massachusetts Corporation.

      Defendants and Counter-claimants.

## MEMORANDUM OPINION AND ORDER

THIS MATTER came before the Court upon the remand of United States District Judge Johnson [Doc. 235], concerning the order to produce a document, Log No. 17, to which Liberty claims the attorney-client privilege or work product doctrine applies. This Court had previously ruled that the document was not covered by the attorney-client privilege [Doc. 224], and Liberty appealed that decision to the presiding district judge [Doc. 227] . The district judge upheld the finding that the document was not protected by the privilege, but asked this Court to consider Liberty's argument that work product immunity should attach to Log No. 17.

I have carefully reviewed the initial briefing submitted by Liberty before me.  *See* Doc. 222.   Liberty began its arguments with the conclusory statements that " a review of the seventeen documents demonstrates that each one is in fact covered by either the attorney-client privilege and/or the work product privilege."  Doc. 222 at 2.  When addressing the seventeen documents individually, however, *all* of Liberty's arguments

with regard to Log No. 17 were based on the attorney-client privilege.  *See* Doc. 222 at 9-10.

The party asserting a protection under the work product doctrine as a bar to discovery must prove the doctrine is applicable.   *See Barclaysamerican Corp.  v. Kane*, 746 F.2d 653, 656 (10th Cir. 1984).   A mere allegation that the work product doctrine applies is insufficient.  *See Peat, Marwick, Mitchell &  Co. v.  West*, 748 F.2d 540, 542 (10th Cir.  1984).  The Court is of the opinion that Liberty waived its work product claim as to Log No. 17 by failing to meet its burden of proof in the original briefing before me.

Having now reviewed Liberty's objection submitted to the district judge, it is apparent that it was not until those objections that Liberty possibly argued work product immunity, if so, ambiguously referring to a "privilege."  *See* Doc. 227. Legal arguments raised for the first time in objections to a magistrate judge's report and recommendation are deemed waived.  *United States v. Garfinkle*, 261 F.3d 1030, 1031 (10th Cir. 2001). Nevertheless, the Court will address the substantive merits of Liberty's claim of work product immunity in the event this matter is again appealed to the district judge.

On October 22, 2009 at 1:40 p.m. Liberty Mutual Vice President Jeffrey Tipton sent an e-mail to various individuals within Liberty, including in-house counsel Stan Hiers and CFO James McCrackin.  The e-mail concerned a conversation Tipton had just completed with the principals at Atlas and individuals at First Community Bank, the institution that held the letter of credit (LOC).  It is evident from Tipton's e-mail that problems had arisen with  First Community Bank's continued solvency and that Atlas

2

was seeking alternative financing from other institutions.     In this e-mail, McCrackin was asked whether he agreed with  First Community's assertion that a ten per cent CAR (Capital Adequacy Rate) was sufficient in the event of a bank failure.

At 4:51 p.m., McCrackin responded.  He didn't think the bank was well capitalized and opined that he wouldn't keep his money there.  He notes that in the event the bank failed, Jimmy Daskalos could lose over $5,000,000 (Daskalos had $6,000,000 as collateral for the LOC and funds are only insured by FDIC up to $250,000).

McCrackin said it sounded to him as if Atlas "wants to end the relationship with Liberty and leave us with a LOC from an E-rated bank that could fail.  Will he give us the $6M as cash collateral?  And his personal guaranty . . . . which could help us go after his assets down the road?"  (Elipses in original.)  McCrackin then provides some financial avenues that Liberty could take, even if such courses of action led to Atlas's downfall.

Liberty claims this e-mail was prepared in anticipation of litigation and that McCrackin's statements were offered for the purpose of obtaining legal advice.

"The goal of the attorney work product doctrine is to protect an attorney's subjective analysis and substantive efforts in, or in anticipation of, litigation from use by the adverse party."  *Lindley v. Life Investors Ins. Co.*, 267 F.R.D. 382, 388 (N.D. Okla. 2010) (internal quotation marks & citation omitted).  "However, because all privileges are 'in derogation of the search for truth,' both [the attorney client privilege and the work product doctrine] are narrowly construed."   The party asserting the protection has the burden of "clearly showing" that it applies.  *Id*.

3

"Establishing work-product protection often depends on a showing that there was a reasonable threat of litigation and that the threat was the motivation for creating the document(s) in question.  *Id*. at 394.   "'In anticipation of litigation' contains two related, but nevertheless distinct, concepts.  One is temporal.  The other is motivational."  *Id*. (quoting *United States ex rel. Fago v. M & T. Mortgate Corp.*, 238 F.R.D.  3, 6 (D.D.C. 2006)).  As explained by the court, the critical inquiry is whether the document would have been created regardless of the anticipated litigation.  *Id*.   Moreover, "[d]ocuments created for business reasons do not become privileged simply because they are tendered to in-house counsel."  *Id*. at n. 11

As stated by one authority:

> (1) Were the documents prepared in the ordinary course of business, such as an insurance company's investigatory files?  (2) Was there an independent business purpose for which the documents would have been prepared even if there had been no litigation anticipated?
>
> If the answer to either question is yes, then there is no need to accord the document work-product protection.

Edna Selan Epstein, The Attorney-Client Privilege and the Work Product Doctrine, Vol. II at 855 (5th Ed.).

"Prudent parties anticipate litigation and begin preparation prior to the time suit is formally commenced.  Thus the test should be whether, in light of the nature of the document and the factual situation in the particular case, the document can fairly be said to have been prepared or obtained because of the prospect of litigation."  8 Charles A. Wright, *et al.*, Federal Practice and Procedure, § 2024, p. 343 (1994 ed.).

In *Christensen v. American Family Mutual Ins. Co.*, 2011 WL 3841293 (D. Utah 2011) (unpublished opinion), the insurance company claimed work product immunity to several files and documents.  For one such document,  the insurance company argued that it was not discoverable because it involved  "a discussion with  in-house legal counsel about the facts of the [bad faith] claim and an analysis directly with in-house legal of the exposure if and when the matter proceeds to formal litigation."  *Id*. At *5. The court held that the document was discoverable because the insurance company "fails to demonstrate that the document was prepared in anticipation of litigation or trial or that it represents the mental impressions, conclusions, opinions, or legal theories of in-house counsel in preparation for trial.  *Id*.  So, too, in this case.

This McCrackin e-mail indicates he is offering  financial advice which he is paid to do: that is, even without litigation his job is to provide analysis of the solvency of financial institutions when such matters affect Liberty's interests.  The fact that he began extrapolating about what financial consequences would result  depending upon what action Liberty took, does not move this e-mail from the realm of business advice to protected work product. Whether or not litigation was a possibility at this time, the primary purpose of this e-mail is to offer financial advice and would have been offered in any event as a prudent business course.  There is simply nothing in McCrackin's discussion that reveals the strategy, thought processes, or legal theories of in-house or outside counsel.   Accordingly, the Court finds that Log. 17 should be produced.

IT IS SO ORDERED.

_____
United States Chief Magistrate Judge