**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

ATLAS RESOURCES, INC., a New Mexico
corporation,

    Plaintiff,

    vs.                                                  CV09-1113 WJ/KBM

LIBERTY MUTUAL INSURANCE CO., a
Massachusetts corporation, and LIBERTY
MUTUAL FIRE INSURANCE COMPANY, a
Massachusetts corporation,

    Defendants.

**MEMORANDUM OPINION AND ORDER OVERRULING
OBJECTIONS TO MAGISTRATE JUDGE'S FINDINGS**

THIS MATTER comes before the Court upon Objections filed on September 26, 2011 by Liberty Mutual Insurance Co. and Liberty Mutual Fire Insurance Company (collectively, "Liberty") **(Doc. 244)** to Chief Magistrate Judge Molzen's Order of September 9, 2011 (Doc. 240) Regarding Work-Product Privilege.  Having considered the objections, response and reply, as well as the applicable law, I find that the objections are overruled.

**Background**

The issue here is whether Liberty should be compelled to produce a document, Log No. 17, also referred to as the October 22 "McMackin Email."  Judge Molzen previously ruled that certain documents which had been inadvertently produced were not protected by privilege.  Doc. 224.  Liberty objected to those findings and appealed to this Court.  I upheld Judge Molzen's findings in general, except with regard to Log 17, which was remanded to Judge Molzen to consider whether Log No. 17 was protected by work-product privilege based on the parties'

previously submitted briefs. Doc. 235 at 2. On remand, Judge Molzen entered a Memorandum Opinion and Order wherein she concluded that Liberty had waived its work product claim as to Log No. 17, and that the McMackin Email was not protected work product. Accordingly, Judge Molzen ordered the McMackin Email to be produced, and Liberty now appeals.

## Discussion

A party may submit objections to either the factual findings or legal conclusions of a magistrate judge. The District Court must set aside any part of the order that is "clearly erroneous or is contrary to law." Fed. R. Civ. P. 72(a). Regarding factual findings, the District Court reviews the magistrate judge's decision for clear error "after reviewing all of the evidence." *See Weekoty v. United States*, 30 F. Supp. 2d 1343, 1343-44 (D.N.M. 1998) (sustaining a party's objection and reversing the magistrate judge's order). Regarding legal conclusions, the District Court is to review the magistrate judge's decision *de novo* and "owes no deference to the magistrate judge's legal conclusions and it may substitute its own judgment on questions of law. *Id.* at 1344. Under 28 U.S.C. § 636(b)(1), the District Court may: (1) accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge; (2) receive further evidence; or (3) recommit the matter to the magistrate judge with instructions.

**I.      Waiver**

Defendant argues that it did not waive the work product privilege, and also that Log No. 17 was prepared in anticipation of litigation for trial. Reviewing the myriad of court documents related to this issue, the Court agrees with Judge Molzen's finding that Liberty waived the work product privilege. While Liberty made passing reference to the work product doctrine in its briefs, there were (as Judge Molzen correctly noted) no legal *arguments* advanced on this theory,

particularly with regard to the McMackin Email. *See* Doc. 222 at 7, 12. The only legal argument made with reference specifically to Log No. 17 is based solely on attorney-client privilege. *See* Doc. 222 at 9 & n.23 ("Mr. Tipton intended for this communication to remain confidential as the heading on the email memorandum states "Attorney/Client Privileged Correspondence"). Doc. 222 at 9 and n. 23.

The Court has also reviewed Liberty's objections on the merits, as well as the chain of e-mails filed with the Court under seal as "Exhibit A" (Docs 228 & 245), to ensure some finality to this issue.

## II.     The McMackin Email

The McMackin Email was sent on October 22, 2009 by Liberty Mutual Vice President Jeffrey Tipton to various individuals within Liberty, including in-house counsel Stan Hiers and CFO James McMackin.[1] The e-mail concerned a conversation Tipton had just completed with the principals at Atlas and individuals at First Community Bank, the institution that held the letter of credit (LOC). The LOC was issued by First Community Bank, Atlas' financial institution, in order to provide security for the sale of a workers' compensation plan and associated premiums. The LOC was issued for Liberty's benefit. *See* Doc. 16.

Log No. 17 concerns McMackin's response to Tipton's e-mail.[2] The response can summarily be described as McMackin's concern over the well-being of First Community Bank,

---

[1] The Court uses the spelling found in the e-mails, rather than "McCrackin," which is found in some of the Court documents.

[2] The e-mail is contained in the sealed Exhibit A. The Court notes that the quality of the copy is poor, and may account for the discrepancy in the exact time the e-mail was sent. The Magistrate Judge's findings state that the e-mail was sent at 4:51 p.m. Doc. 240 at 3. However, the time on the e-mail appears to be 1:40 p.m. Doc. 228-4 (Ex Parte and under Seal) at 3. Nevertheless, the content of the e-mail as described by the Magistrate Judge is accurate.

and the effect of the bank's demise on the LOC held by Liberty.  McMackin suggested possible courses of action that would minimize the fallout.

Having completed my own review of the document in question, I find no error in Judge Molzen's conclusion that Log No. 17 belongs more in the category of business advice than protected work product, or that Liberty did not satisfy its burden of clearly showing that work product applies to the document.  Liberty relies on affidavits which state that the e-mails were sent during a time it clearly anticipated litigation with Atlas.  However, merely saying so does not make it so.  As Judge Molzen noted, the "in anticipation of litigation" inquiry contains a temporal as well as motivational concept.  Regardless of any temporal proximity the creation of the McMackin Email has to the filing of the complaint in this case, the motivation for the McMackin Email was not clearly preparation for litigation.  As Judge Molzen found:

> This [McMackin] e-mail indicates he is offering financial advice which he is paid to do: that is, even without litigation his job is to provide analysis of the solvency of financial institutions when such matters affect Liberty's interests. The fact that he began extrapolating about what financial consequences would result depending upon what action Liberty took, does not move this e-mail from the realm of business advice to protected work product. Whether or not litigation was a possibility at this time, the primary purpose of this e-mail is to offer financial advice and would have been offered in any event as a prudent business course. There is simply nothing in [McMackin]'s discussion that reveals the strategy, thought processes, or legal theories of in-house or outside counsel.

Doc. 240 at 5.   I agree with this assessment.  Log No. 17 expresses more a concern with Liberty's financial security in the future, rather than preparation for litigation.

## Conclusion

In sum, I find and conclude that Judge Molzen's finding that Log No. 17 (the McMackin Email) is neither clearly erroneous nor contrary to law.  In fact, Judge Molzen's finding regarding the McMackin Email is entirely consistent with controlling precedent on what is

protected by the attorney work product privilege.  Accordingly, Liberty's objections are OVERRULED, and the Magistrate Judge' Order requiring production of this document shall remain unmodified and in full force and effect.

    **SO ORDERED**.

                                          _____
                                          UNITED STATES DISTRICT JUDGE