IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

ATLAS RESOURCES, INC., a New Mexico
Corporation,

       Plaintiff,

v.                                          CIV 09-1113 WJ/KBM

LIBERTY MUTUAL INSURANCE CO., a
Massachusetts Corporation, and LIBERTY
MUTUAL FIRE INSURANCE COMPANY,
a Massachusetts Corporation,

       Defendants.

## MEMORANDUM OPINION AND ORDER ON DEFENDANTS' MOTION TO COMPEL AND FOR SANCTIONS *(DOC. 339)*

       THIS MATTER comes before the Court on Defendants' Motion to Compel and For Sanctions Against Atlas Resources, Inc. for Discovery Abuses *(Doc. 339)*, filed July 31, 2012 and fully briefed on September 4, 2012.  *See Docs. 339, 363, 371, 373.*  Having reviewed the parties' submissions and the applicable law, I find the Motion is well taken and should be granted.

**I.**       **BACKGROUND**

       The Court has had occasion to consider no less than five motions filed by Plaintiff Atlas Resources, Inc. ("Atlas") seeking sanctions from Defendants for alleged discovery abuses and violations of Court orders.  *See Docs. 117, 170, 185, 306, 321.*  The instant motion is the first occasion on which Defendants Liberty Mutual Insurance Company and Liberty Mutual Fire Insurance Company (collectively, "Liberty Mutual") have requested similar sanctions against Plaintiff Atlas.

Liberty Mutual contends that Atlas has committed sanctionable discovery abuses with respect to its experts, Troy Kisiel (claims handling), Ernest Csiszar, and Robert Cremer (actuary). Early in this litigation, on April 9, 2010, Liberty Mutual served discovery, including Request for Production ("RFP") No. 12, which requested "the complete file and CV for any expert you expect to call at the trial of this case." *See Doc. 339* at 3. Atlas did not object and responded simply, "Previously produced." *See id.*

On May 29, 2012, over two years later and just three days before Mr. Kisiel's deposition, Atlas emailed over 500 pages of "electronic notes" prepared by Mr. Kisiel. *Id.* at 4. Among these pages were 60 Excel spreadsheets analyzing charges and payments on claims files. *See id.* Mr. Kisiel testified in his deposition that in the process of creating these spreadsheets, he discovered "payment shortfalls" and therefore formed the opinion that Liberty Mutual had not properly paid claims. *See id.* at 5; *Doc. 339-1* at 26. Mr. Kisiel also testified that he was not aware Liberty Mutual had requested his entire file. *See Doc. 339* at 5. During the July 2, 2012 deposition of Mr. Csiszar, Liberty Mutual contends it learned of several documents that were never provided: (1) handwritten notes recording his time spent on the case; (2) email communications with counsel for Atlas; and, potentially, (3) a draft of Mr. Kisiel's report. *See Doc. 339* at 7. Finally, although Mr. Cremer's deposition was scheduled for June 14, 2012, Atlas did not produce any documents from Mr. Cremer's file until June 6, 2012. *Id.* at 8. As a result, Liberty Mutual contends its actuarial expert was unable to fully develop his opinions and respond to Mr. Cremer's report. *Id.*

Atlas states, regarding Mr. Kisiel's file, that it only learned of the additional 500 pages of documents in his file on May 28, 2012, or the day before these documents were produced to Liberty Mutual. *See Doc. 363* at 5. Regarding Mr. Csiszar, Atlas argues that the items not

2

produced were either not formally part of Mr. Csiszar's file and/or were not kept or relied upon by him. *See id.* at 9-10. Atlas maintains that all of its expert-related production, including production of Mr. Cremer's file days before his deposition, constitutes timely supplementation, considering that it occurred within two months of its experts' reports. *See id.* at 11-12.

## II.     LEGAL STANDARD

As part of an expert witness' report, parties are to include not just a complete statement of all of the expert's opinions and the basis and reasons for them, but also any and all "facts or data considered by the witness in forming them." FED. R. CIV. P. 26(a)(2)(B). "This provision imposes a 'duty to disclose information regarding expert testimony sufficiently in advance of trial that opposing parties have a reasonable opportunity to prepare for effective cross examination and perhaps arrange for expert testimony from other witnesses.'" *Neiberger v. Fed Ex Ground Package Sys., Inc.*, 566 F.3d 1184, 1191 (10th Cir. 2009) (quoting FED. R. CIV. P. 26 advisory committee's note ¶ 2 (1993 amend.)). "[A]n expert report must not be sketchy, vague or preliminary; it must be detailed and complete, including how and why the expert reached a particular result, not merely the expert's conclusory opinions." *In re Motor Fuel Temp. Sales Practices Litig.*, Case No. 07-1840-KHV, 2011 WL 5506259 at *1 (D. Kan. Nov. 10, 2011) (citing Fed. R. Civ. P. 26(a)(2)(B) Advisory Committee Note (1993)).

When a party fails to properly supply expert information under Rule 26(a), "the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." FED. R. CIV. P. 37(c)(1). "The determination of whether a Rule 26(a) violation is justified or harmless is entrusted to the broad discretion of the district court." *Woodworker's Supply, Inc. v. Principal Mut. Life Ins. Co.*, 170 F.3d 985, 993 (10th Cir. 1999). Explicit findings in this regard are not required, but the

court should consider the following factors: "(1) the prejudice or surprise to the party against whom the testimony is offered; (2) the ability of the party to cure the prejudice; (3) the extent to which introducing such testimony would disrupt the trial; and (4) the moving party's bad faith or willfulness." *Spirit Bank Corp. v. Warner Aviation, Ltd.*, No. 11-CV-81-TCK-FHM, 2011 WL 6415472, at * 4 (N.D. Okla. Dec. 21, 2011) (quoting *Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 952 (10th Cir. 2002)).

### III.   ANALYSIS

The Amended Scheduling Order entered November 1, 2010 provides that Atlas was to identify experts and submit their reports by June 2, 2011. Liberty Mutual's expert deadline was July 5, 2011. *See Doc. 150* at 1. The Second Amended Scheduling Order agreed by the parties provided for supplementation of Mr. Kisiel's report no later than December 15, 2011. Atlas was permitted until February 27, 2012 to identify rebuttal experts and produce its expert reports. *See Doc. 263*. The subsequently entered Third Amended Scheduling Order did not affect expert deadlines. *See Doc. 293*.

In cases more egregious than this, the Tenth Circuit has held that a Court may reasonably strike expert reports. *See, e.g., Martinez v. Target Corp.*, 384 Fed. Appx. 840, 847 (10th Cir. 2010) (affirming district court's decision to strike expert reports which were submitted nine months after the expert disclosure deadline); *Kern River Gas Trans. Co. v. 6.17 Acres of Land*, 156 Fed. Appx. 96, 102-103 (10th Cir. 2005) (affirming district court's exclusion of expert testimony where party had failed to disclose any expert report); *Means v. Letcher*, 51 Fed. Appx. 281, 283-84 (10th Cir. 2002) (affirming district court's decision to grant a new trial after the plaintiff's expert offered opinions at trial that were not included in his expert report).

In cases less egregious, the Tenth Circuit has found that sanctions are not appropriate. *See, e.g., Neiberger* 566 F.3d at 1192 (finding no prejudice from expert's failure to produce peer-reviewed literature supporting expert's opinion where opposing party's expert, himself, agreed with the opinion and identified peer-reviewed literature in support of the opinion at his own deposition). In a case similar to the present case, the Tenth Circuit found that although the expert disclosure at issue was inadequate, any prejudice to the opposing party was curable since the expert could be re-deposed before the end of the discovery period. *See Gillum v. United States*, 309 Fed. Appx. 267, 270 (10th Cir. 2009).

Regarding the extent of the required expert disclosure, district courts within the Tenth Circuit have noted that Rule 26(a)(2)(B) "does not require that a report recite each minute fact or piece of scientific information that might be elicited on direct examination to establish the admissibility of the expert opinion under *Daubert*." *McCoy v. Whirlpool Corp.*, 214 F.R.D. 646, 652 (D. Kan. 2003); *accord Etherton v. Owners Ins. Co.*, Case No. 10-CV-00892-MSK-KLM, 2011 WL 684592 at *1 (D. Colo. Feb. 18, 2011) (holding that Rule 26(a)(2)(B) "does not require production of every scrap of paper with potential relevance to an expert's opinion"); *Cook v. Rockwell Int'l Corp.*, 580 F. Supp.2d 1071, 1121-22 (D. Colo. 2006) (noting that there is no "suggestion in Rule 26(a)(2)(B) that an expert report is incomplete unless it contains sufficient information and detail for an opposing expert to replicate and verify in all respects both the method and results described in the report"). Although it was not necessary for an expert to include five pages of his mathematical calculations with his expert report, the District of Colorado nonetheless deemed, "in an abundance of caution," that it was appropriate to allow the opposing party to reopen the expert's deposition for the limited purpose of questioning him concerning the calculations. *Etherton* at *3.

Given the June 2, 2011 deadline for original expert reports, I find, consistent with the requirements of Rule 26(a)(2)(B), that Atlas should have produced all documentation "considered" by their experts by June 2, 2011.  Supplementation of the reports a year later, months after Atlas' deadline to identify rebuttal experts and just days before the experts' depositions, is not timely supplementation.  This is true with respect to each of the three experts at issue in Liberty Mutual's Motion, but particularly so in the case of Mr. Cremer, where deficiencies in underlying documentation were identified as early as September 2011.  *See Doc. 371* at 7 (excerpting portions of Patrick Whatley's expert report, which noted such deficiencies).

Atlas' position that the materials at issue need not be produced because they were not relied on by their experts is not convincing.  Rule 26(a)(2)(B) requires production of the basis and reasons for the expert's opinions and the facts or data "considered by" the witness.  The standard is not whether the expert "relied on" materials.  An expert's communications with the counsel who hired him should be produced.  Likewise, the calculations underlying an expert's opinions should be produced.  Counsel are advised to appropriately instruct experts, who, unlike the attorney, "more likely preoccup[y themselves] with [their] profession or field of expertise" than with the requirements of Rule 26.  *See Marek v. Moore*, 171 F.R.D. 298, 301 (D. Kan. 1997).

Analyzing Atlas' failures according to the *Jacobsen* factors, I find that only limited sanctions are appropriate.  While I have no trouble finding that Atlas' failures caused prejudice to Liberty Mutual, such prejudice is curable in that the depositions of Atlas' experts can be reopened for the limited purpose of allowing Liberty Mutual to question these experts regarding documents that have as yet not been produced or which were produced for the first time just about within a week of previous depositions.  It does not appear that Atlas engaged in bad faith

but rather an unfortunately not uncommon neglect of their discovery responsibilities late in litigation. I do not believe my order will upset the trial schedule in this case.

Wherefore,

**IT IS ORDERED** that Defendants' Motion to Compel and for Sanctions *(Doc. 339)* is **granted**. Plaintiff Atlas Resources is ordered to produce all documents considered by their experts Kisiel, Csiszar, and Cremer, as required by Rule 26(a)(2)(B), no later than December 1, 2012. Liberty Mutual may then re-depose such experts, with costs and expenses (including the experts' fees, room rental, travel, court reporter fees, and the like but specifically excluding attorney's fees) to be paid by Atlas.

_____
UNITED STATES CHIEF MAGISTRATE JUDGE